May it please the Court, Mary Ann Dugan for the Plaintiff, Julie Joki, Appellant. The Court asked each side to specifically address an issue regarding whether hostile work environment analysis applies to Equal Protection Clause claims and if the Court would like I can start with that issue. The Equal Protection Clause in the employment discrimination context has consistently been analyzed in the same way as Title VII claims as both sides indicated in their briefs. That goes back at least as far as 1991 in this circuit in the Syscho-Naunajad case. And in one of the cases mentioned in the Court's recent order, Bador, which was 1994, Ninth Circuit, this Court held that it was clearly established as of the 1980s at least that sexual harassment can be addressed in the Equal Protection context. And in that case, this Court specifically used the phrase hostile treatment. What of a hostile nature, a hostile work environment happened during the limitations period? During the limitations period, Ms. Joki consistently had a higher workload. Mr. Underwood shunned her at a meeting and wouldn't give her critical information for critical to her job. When she asked a question and he turned his back? Yes, Your Honor. Let's stipulate that's rude. Let's stipulate that's rude and it's not professional. How is that a gender issue? Ms. von Ravenhorst testified in her declaration that that was clearly gender biased because she had not seen that kind of behavior except in terms of women. It was also part of a pattern. Was it her opinion that turning his back was a gender issue? Yes, Your Honor. And it's part of a pattern. And it was a racial issue. I mean, you know, that's just her opinion, isn't it? Well, Your Honor, that's a fact-specific issue. And as this Court has repeatedly stated, showing animus is a highly fact-intensive issue of which there will very rarely be any direct evidence. What else besides he turned her back? During the limitations period, Your Honor. Just to reemphasize in the National Railroad v. Morgan case, the Supreme Court clearly stated that earlier events can be used to show a pattern and to show context as far as you have to show actionable discrimination in the statute of limitations. Then you get to go outside of it, correct? You have to show at least one event that is part of the hostile environment as far as the hostile environment claim goes. The one event itself need not be actionable, just to clarify that. The pattern of hostile environment is what's actionable, as the Supreme Court made very clear in National Railroad. Another event within the limitations period was that Mr. Carlisle, who if you look in the record at 111, was the head person over everyone else other than the President. Mr. Carlisle pointed to his eyes and then at her in a manner that made clear to her that he was angry with her. Yes, Your Honor. What's the gender issue with that? Again, it was part of a pattern of Mr. Carlisle treating her consistently hostile. He's the one who had pinched her and told her to be a good girl. Okay, but you don't get to the other ones. You've got to get there in the statute of limitations before you get to the other ones, right? Get to the other events. Yes, that you want to bring in under Morgan. So what do you have in the statute of limitations? You have the stare down, you have the turn the back and not answering a question, and then you have the visit to the class. Visit to the class by Mr. Lamb, which again, as Von Ravenhorst said, was clearly in her opinion observing over the years was gender-based because she had never seen that kind of behavior with male colleagues. And again, also the higher workload, which was consistently that went on during the entire period. And then the constructive discharge, which is the result of all of these. If we were to allow you to get into the events outside the statute of limitations, we have to find that those three events somehow rise to a hostile work environment, right? Those three events need not by themselves create a hostile work environment. What the Supreme Court said in National Railroad v. Morgan is even if the events that occurred within the limitations period by themselves would not be sufficient, if you look then at the whole pattern over the years predating the limitations period and those events altogether are severe and pervasive, then that is sufficient for a hostile work environment claim. And this court in, I believe it was Kang, had a similar situation where Mr. Kang could not even remember any event within the limitations period, and yet this court stated that there was a sufficient pattern that was ongoing to allow for a hostile work environment claim. Mr. Carlisle, the man who has the hostile gesture with the eyes that Ms. Jokey calls threatening, this is the same man who, while they're sitting next to each other at a meeting, puts his hand on her thigh, goes up to her crotch, and then squeezes hard. The same man who squeezes her so hard on another occasion is to leave bruises, and she finally realizes after she's complained to Noah Vail to Ms. Hauser that the only way she can protect herself from his physical sexual advances is to distance herself. That's Carlisle. Yes, Your Honor. And so now he is within the 1983 limitations period making a hostile gesture to her, and your argument is in the context of the past behavior, this is a continuation of a hostile work environment. Yes, Your Honor. Did she complain about the thigh incident at any time prior to the statute of limitations expiring? Yes, Your Honor. I believe in her declaration, which is 127 to 144 in the executive record. I don't know the exact page, but she explains the pattern that went on over the years and the fact that she complained and that when she complained she was either told to just be quiet or she was given assurances that things would get better and then they did not. Did she file an EEOC charge or anything like that? Yes, she did file a charge. Within the limitations period? No, Your Honor. There was, and actually to correct myself, I believe that she made a claim of unequal pay back before the limitations period, and she also separately complained of this hostile treatment. I don't, I cannot swear that she made an EEOC claim about the hostile treatment separate from the equal pay complaint. Any of the things that Judge Fletcher was just talking about, did she complain about that in a formal way, in an EEOC sort of way? I cannot swear to that, Your Honor. But I think the best case you've got is the things that you've outlined, that is to say the shunning, turning the back, the eyes threatening, the class visit, and the unequal course load. I think that's the only thing you've got during the 1983 limitation period. And then the question is, in context, given what happened outside the limitation period, is that a continuation of the hostile work environment? Yes, correct, Your Honor. And Mr. Underwood, who was the department head and the chair of the Humanities Department, he is the one who accused her of having penis envy, and he is the one who shunned her during the limitations period. So, again, there's a pattern of these same people. He's the one who sends the e-mail comparing the eye to a penis and the knee to a vagina. He's the one who says that she got mono from students in the e-mail and so on. Yes. And I think also if you look at the volume of the record, the E.R. and the S.E.R., it's clear that there's a highly fact-intensive situation here that deserves remand and trial.  Thank you. I see we've got about a minute and change left. Thank you. Thank you, Your Honor. Robert Franz for the defendants. Can you talk into the microphone for us, please? I beg your pardon? You can speak directly into the mic. Okay. We'd appreciate it. In response to a couple of the questions, no teacher is going to allow a man to rub his crouches. Pull the mic up a little further. Just lift up. There you go. I normally don't have a soft voice. No teacher is going to sit there and let somebody rub their crouch and assault them without complaining immediately, especially Ms. Jokey, and that complaint was never made. This is all... I can't hear you. You're mumbling and you're speaking too softly. This is... No teacher is going to allow somebody to touch them or assault them, especially Ms. Jokey, without complaining. Well, I don't... And she did not complain immediately. But the thing is you can't say that no teacher would allow that because we've, you know, we've been around a long time between all of us, and the fact is stranger than fiction, and things that shouldn't be allowed do happen, so that sort of conclusory statement doesn't really help us. Well, I think... What helped me is what does she have to, what does Jokey have to show during the statute of limitations in order to get outside, to bring in the, you know, to bring in the outside... An act that makes the work environment hostile. No, that's not right. She has to show an act within the limitation period that is a continuation of hostile work environment, even if that act considered on its own would not be actionable. I think that's the law. Yes, and related to the prior events. There has to be some sexual relation. Let me start with the premise to make sure that you and your adversary are on the same page. Do you agree with your adversary that a hostile work environment claim lies under the Equal Protection Clause sued under 1983? Yes. Okay. So, in other words, we do go back then to all of the events that we just talked about, which the district court did not look to. Well, I think the district court did. No, the district court did not. The district court, in terms of hostile work environment, looked only to the class visitation and the workload. I think that he went to the eyes and to the shunning. He mentions the shunning. But I don't think he considered that as within the statute of limitations period. I believe he did. Well, I'll go back and read. Yeah, because she was complaining that he put shunning in quotation marks. One thing I want to point out on this idea of violation of equal protection when you sue the individuals. For example, let's take Ms. Hauser, who no longer was Ms. Jolke's supervisor. Mr. Lamb, remember on the Penis Envy, they had a full grievance, and then they grieved that out and worked that out, and Mr. Lamb was brought in as a supervisor because at that time she got along with Mr. Lamb. But can you tack a different individual's events against one individual? So Ms. Hauser is no longer the supervisor at the time of the constructive discharge. Can you take an act by Carlisle? Can you take an act by Underwood to hold her liable for creating a hostile work environment? Well, when the suit is against the college, so if we're talking about the suit against the college, any act by a supervisor is attributed to the college. I'm talking about the suits against the individuals that she's made. She sued each individual. But we also have a suit against the college. Is that correct? Correct. But we're also asking for the summary judgment to be affirmed as the individuals. So that's the difficulty when you have a hostile work environment, but individuals are sued. Can you tack Bob Jones, Betty Smith? Can you take each event? Or does a hostile event from that particular person have to occur within the statute? But the harder problem for you is the suit against the college. And if there was a hostile work environment created by these people acting together as her supervisors, the college is on the hook. And I agree. Yeah. But then you can affirm the motion for summary judgment as to the individuals, because they're being sued, too. I represent the individuals, too. So, for example, you have... I understand that, but we have here in front of us a summary judgment on behalf of all the defendants, including the college. Correct. Yeah. I just want to make sure we're making a distinction between, you know, for example, Ms. Hauser. What act did she do within the statute of limitations? Mr. Carlisle. I mean, you know, she's trying to tack everybody. So I just want to point that out. Also, I think under the Section 1983, the act has to be intentional. So what intent is there on these individuals to create this sexual hostile environment? I mean, you clearly have Mr. Lamb reacting to students that are complaining about her conduct in class. Yeah, I have to say I'm more troubled by the continuation of the behavior by Mr. Underwood and by Mr. Carlisle. If you look at what Mr. Lamb did, considered in isolation, once the students are complaining, it does not seem to me terribly out of line to go visit the class. No, the more troublesome ones to me are Carlisle, who you want to tell us that she's not telling the truth, but she can't get there from here on summary judgment. We have Carlisle who's sitting next to her meeting, puts his hand on her thigh, reaches up to her crotch, and then squeezes very hard. And this is having in many other occasions squeezed her, bumped her, on one occasion leaving bruises. Carlisle then within a limitation period expresses what she views as threatening behavior, exhibits threatening behavior. You know, if someone rapes a woman and a little while later when she does something raises an eyebrow, that may be viewed as very threatening by the woman. So how do you say that a threatening gesture by Carlisle in this context is not a continuation of harassing behavior? Well, I can see you finding that, but let's just switch to now the university. That was never reported. So now how can you hold the university liable for that act? He's a supervisor. It's a different test if it's as to a co-worker. Under Section 1983, it has to be a policy and custom of the college. The college did not have a policy and custom. This was not even reported to the college to have a written policy against sexual harassment. So on the equal protection claim, the policy and custom is not to harass. Carlisle's conduct was not reported. Therefore, there can't be some tacit creation of that. I think you're confusing the law holding responsible supervisors and the employer the supervisor with the law applicable to harassment by co-workers. Was Mr. Carlisle in a supervisory position? Yes. Yeah.  So when you're analyzing this, let's make sure we're talking about the same cause of action. Section 1983, there has to be a proof of policy and custom by the college. There's no respondent superior. Carlisle's conduct is not reported, so how can the college have a custom and policy? For custom and policy, and I'm now not talking Carlisle. I'm just talking general law. For custom and policy, all you need to have is someone in a policymaking position and someone who is a supervisor or qualifies. I respectfully disagree that policymakers are the board of the college. He was not delegated policymaking authority. What was the actual position that Mr. Carlisle occupied? Associate dean. I can't remember how high up he was. But he was in the administration of the college. He was in the administration, and this Court's found many times that that's not a policymaker for the policy on sexual harassment. He does not have the right to violate the written policy of the university of no sexual harassment. As I recall, he was dean of instruction in charge of the humanities department. Is that correct? Carlisle? I had him down as he worked for the president of the college. Well, he switched a couple of times, so I get him confused a little bit. Yeah, okay. Okay, but my point is I think we're on the same page. At least we respectfully disagree as to what we disagree to. Now, if you were to agree, and I understand you're not conceding and I'm not asking you to, that Mr. Carlisle's acts can be attributed to the university. Okay. Is his action described by Ms. Jokey as threatening? A continuation of what I think everyone would concede would be sexually harassing behavior that he did outside limitations period. I don't see how that can be threatening. I see you. What does this mean? Well, she said it was threatening. Now, we may just be like that. It may be pretended through three stooges, but with us not being there, it's hard for us to know whether it was threatening or not. Some things could be really threatening. He says you read the face. I mean, threatening is subjective, I agree. I don't see how this can be. Giving all inferences to Ms. Jokey in terms of when the question was not answered and turning around, was that during a meeting or after a meeting? The way she describes it was just after the meeting was over. No, I'm sorry. This is Carlisle Underwood, I'm sorry. I mean, the meeting ends, apparently a witness said she goes up and he just turned around. I'm just reading from Ms. Jokey's declaration. He behaved in a threatening manner. He saw me across a room at a faculty orientation, pointed at his own eyes, pointed those two fingers at me in a jabbing gesture that I knew meant he was displeased, intended to pressure me, make my work life difficult. Just as he had been doing all along, his face was very red with anger. She views it as threatening. As she describes it, it sounds as though it might have been threatening. So, I mean, it's subjective. I think it's an objective decision by you. If you find that it's threatening, then that one's reversed. I'm sorry. It's an objective statement. If you find that that is a continuation, that that conduct is a continuation, then we go to trial on the issue. That's what you're trying to do. You're trying to find if there's a question of fact as to the acts that took place within the statute of limitations. And is your view, then, if it truly was threatening, that that would then be a continuation of the behavior and then a continuation of adverse hostile work environment? If it objectively threatening, yes. I would agree with that. If she was appropriate in her treatment. Does that have a sexual connotation to it? I mean, he could be threatening her because he doesn't like her. Well, I mean, we're assuming it's threatening for sexual harassment,  It has to be related sexually because she's a woman. It has to be related. Every hostile work environment in the workplace, the gestures are often sexual, but they need not be. They can be tied to gender, but they don't always have to be sort of touching her breasts or whatever. It's, you know, I don't like you, and one of the reasons I don't like you is tied to your being a woman. I didn't quite hear that last part. Well, in order to be at a hostile work environment based on gender, the actual behavior does not have to be explicitly sexual. It doesn't have to be the grabbing of the thigh or the breast. It can be expressed in various other ways. It has to be because she's a woman. Well, okay, let's just say, okay, so it doesn't have to be, you know, it doesn't have to be an assault. It doesn't have to be the grabbing of the breast or whatever. Let's look at, like, the e-mail. There were two e-mails, that one, the I, the me, and then there's also the meningitis and all of that. If those two e-mails were in the statute of limitation periods, would those be enough? I don't think so in the context that they were and with the environment of that. But for summary judgment purposes, I mean, can't you get an inference from that when someone's talking about mono and kissing disease and meningitis, that, well, how did you get it from a student? And if they're using words like vagina and penis envy, you don't think that those would be enough? Not in the context that they were used. Not the context that underwent. Well, that's what you would argue at trial. But for purposes of summary judgment, would you get past summary judgment with those? I'm just wondering what's your limit here. Well, my limit would be grabbing her vagina or grabbing her. My limit would be... All right, but the law doesn't say that it has to be that. My limit would be that he intended... The context they're arguing, he's using the terms, he had to intend to harass her. It had to be intended sexual. This is a woman that showed Carlisle pictures of her breast on a tarot card. So you have to take it in the context of how these people reacted, how they interacted. Read the e-mail and see the context of what they're talking about. So if you're counsel for the university, would you tell people those sort of e-mails are okay and it doesn't put you at risk of hostile work environment? No, I would definitely tell them it's not okay. Okay. I'm going to tell you it's okay because we're out of time. Thank you. All right, thank you very much. Ms. Dugan, back to you. Thank you, Your Honors. The district court judge did address the shunning incident and the Carlisle eyes incident, but that was because those were within the two-year period, and he did not address the pattern of hostile treatment. And the defendant's counsel says that you have to take it in the context, and that's exactly true. But that's a fact-specific inquiry for the fact finder. It's this court held in the Mendocino case proving animus and showing what is going on in somebody's mind when they're treating somebody a certain way is a highly fact-specific issue and is not appropriate for summary judgment. Just tell me one more time what you have to show within the statutory period in order to survive summary judgment here. What the Supreme Court said in National Railroad v. Morgan is you have to show that there was at least one incident within the period that contributed to the hostile environment, even if that one incident by itself would not be actionable. All right. So if you prevail here, it would not stand for the proposition that turning your back and walking away during a meeting could ever be enough to state a cause of action for a discriminatory act alone. That's correct, Your Honor. It would simply tie back into the National Railroad v. Morgan analysis and would be acceptable under that analysis. And I see I'm out of time. Thank you, Your Honors. Thank you, Ms. Dugan. Ms. Rance, thank you. The case just argued is submitted.
judges: Silverman, Fletcher, Callahan